UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY; ESURANCE
INSURANCE COMPANY; and
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

C.A. No. 19-cv-10579-SJM-APP

                Plaintiffs,

v.

MICHIGAN PAIN MANAGEMENT
PLLC; DEARBORN PAIN
SPECIALISTS, PLC; STERLING
HEIGHTS PAIN MANAGEMENT,
PLC; ADVANCED SURGERY
CENTER, LLC; NORTH SHORE
INJURY CENTER, INC.; MEDI
TRANSIT INC.; JAMES PADULA,
D.O.; JONATHAN MAFFIA; ELIAS
GOLDSTEIN, D.C.; ALBERT
JEROME, D.C.; FRANCES MADDEN,
M.D.; FATINA MASRI, M.D.;
HAITHAM MASRI, M.D.; ALI FARAJ;
and JAMES DEWEESE,

                Defendants.

## JOINT RULE 26(f) CASE MANAGEMENT REPORT AND PROPOSED DISCOVERY PLAN

Pursuant to Federal Rule of Civil Procedure 26(f), plaintiffs Allstate Insurance

Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (collectively, "Allstate" and/or "plaintiffs") and defendants Michigan Pain Management PLLC ("Michigan Pain"), Dearborn Pain Specialists, PLC ("Dearborn Pain"), Sterling Heights Pain Management, PLC ("Sterling Heights Pain"), Advanced Surgery Center, LLC ("Advanced Surgery"), North Shore Injury Center, Inc. ("North Shore"), Medi Transit Inc. ("Medi Transit"), James Padula, D.O. ("Padula"), Jonathan Maffia ("Maffia"), Elias Goldstein, D.C. ("Goldstein"), Albert Jerome, D.C. ("Jerome"), Frances Madden, M.D. ("Madden"), Fatina Masri, M.D. ("Fatina Masri"), Haitham Masri, M.D. ("Haitham Masri"), Ali Faraj ("Faraj"), and James Deweese ("Deweese") (hereinafter collectively referred to as "the defendants"), by and through their undersigned counsel, jointly submit this Rule 26(f) Report and Proposed Discovery Plan.

A Rule 16 Scheduling Conference is scheduled for **Wednesday, August 7, 2019, at 10:00 a.m.** Appearing for the parties as counsel will be:

- Attorneys Nathan Tilden and Jacquelyn McEttrick for Allstate;

- Attorneys Peter Joelson and Gary Blumberg for defendants Michigan Pain, Dearborn Pain, Sterling Heights Pain, North Shore, Medi Transit, Padula, Maffia, Goldstein, Jerome, Madden, Faraj, and Deweese. ("Pain Defendants")

- Attorney Adam G. Slingwein for defendants Advanced Surgery, Fatina Masri, and Haitham Masri.

1)   **Jurisdiction**: Subject matter jurisdiction is bestowed upon this Court by 28 U.S.C. § 1331 (federal question, specifically the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq*.) and 28 U.S.C. § 1332 (diversity of citizenship).  Supplemental jurisdiction over the plaintiffs' state law claims (common law fraud, civil conspiracy, payment under mistake of fact, and unjust enrichment) is proper pursuant to 28 U.S.C. § 1367.  There is no dispute regarding this Court's jurisdiction over this matter.

2)   **Jury or Non-Jury**: This case is to be tried before a jury.

3)   **Statement of the Case**: This case involves:

      1.   <u>**Plaintiffs' Position**</u>

Plaintiffs' Complaint alleges that the defendants participated in a fraudulent insurance billing scheme that caused Allstate to make payments to the defendants for treatment that was not actually provided, was not lawfully rendered, was medically unnecessary, was fraudulently billed, and was billed at unreasonable rates. The purpose of the fraudulent scheme perpetrated by the defendants was to generate claims to, and collect payment from, Allstate pursuant to Michigan's No-Fault Act for the purported treatment of patients who had been involved in motor vehicle accidents.  To achieve their fraudulent objective, the defendants engaged in a comprehensive scheme to render medical treatment, to the extent that it was actually performed, that was predetermined, excessive, and not medically necessary for

patients' care, recovery, or rehabilitation.   Allstate's Complaint details the defendants' fraudulent scheme, including pervasive billing for services not rendered, fraudulent billing practices, unnecessary treatment, and grossly excessive charges. Allstate's Complaint seeks recovery under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962, *et seq.*, as well as state law causes of action, including common law fraud, civil conspiracy, payment under mistake of fact, and unjust enrichment.   As a result of the defendants' fraudulent acts, Allstate has paid in excess of $3,501,685 to them related to the patients at issue in Allstate's Complaint.   Allstate also seeks a declaration pursuant to 28 U.S.C. § 2201 that the defendants have no right to receive payment for any previously-denied and/or pending bills submitted to Allstate.   The damages asserted against each defendant are as follows:

| Defendant | Count(s) Asserted Against Defendant | Damages[1] | Trebled Damages under 18 U.S.C. § 1964(c) |
|---|---|---|---|
| Michigan Pain | V, VI, IX-XIV, XVII-XXI | $3,501,685 | $8,660,458.80 ($2,886,819.60 x 3) |
| Dearborn Pain | IX-XII, XVII-XXI | $3,501,685 | $7,469,295.48 ($2,489,765.16 x 3) |
| Sterling Heights Pain | IX, X, XVII-XXI | $3,501,685 | $2,411,522.22 ($803,840.74 x 3) |
| Advanced Surgery | I-VI, XVII-XXI | $3,501,685 | $1,809,918.60 ($603,306.20 x 3) |
| North Shore | I, II, XV-XXI | $3,501,685 | $1,471,780.68 |

---

[1] All damages enumerated in this table are estimates as stated in the Complaint, and are to be determined at trial. Nothing herein constitutes a limitation or waiver by Allstate, but rather Allstate demands and asserts all of its damages, including but not limited to attorney's fees and costs.

|  |  |  | ($490,593.56 x 3) |
|---|---|---|---|
| Medi Transit | XIII, XIV, XVII-XXI | $3,501,685 | $993,960.57 ($331,320.19 x 3) |
| Padula | I-XIV, XVII, XVIII, XXI | $3,501,685 | $10,463,253.90 ($3,487,751.30 x 3) |
| Maffia | I-XIV, XVII, XVIII, XXI | $3,501,685 | $10,463,253.90 ($3,487,751.30 x 3) |
| Goldstein | I-XIV, XVII, XVIII, XXI | $3,501,685 | $10,463,253.90 ($3,487,751.30 x 3) |
| Jerome | I-XIV, XVII, XVIII, XXI | $3,501,685 | $10,463,253.90 ($3,487,751.30 x 3) |
| Madden | I, II, VII-XIV, XVII, XVIII, XXI | $3,501,685 | $9,089,352.21 ($3,029,784.07 x 3) |
| Fatina Masri | I-VI, XI, XII, XVII, XVIII, XXI | $3,501,685 | $6,867,691.86 ($2,289,230.62 x 3) |
| Haitham Masri | I-VI, XI, XII, XVII, XVIII, XXI | $3,501,685 | $6,867,691.86 ($2,289,230.62 x 3) |
| Faraj | XIII-XVIII, XXI | $3,501,685 | $1,035,763.77 ($345,254.59 x 3) |
| Deweese | I, II, XIII-XVIII, XXI | $3,501,685 | $2,465,741.25 ($821,913.75 x 3) |

## 2. **Defendants' Position**

- **Position of the Pain Defendants.**

This case is one of many proforma RICO claims filed by Allstate in this district in an attempt to extort settlements of numerous State Court litigations and pending No-Fault receivables. The basis of Allstate's Complaint is that Defendants conspired together to commit medical fraud. Like similar litigations filed by Allstate against targeted medical providers who practice within the Michigan No-Fault system, Allstate makes sweeping allegations that the Defendants performed unnecessary medical treatment to Allstate insureds or committed various acts of

fraud in rendering medical treatment to Allstate insureds. This case only involves those limited patients who treated at or with the Defendants for injuries resulting from automobile accidents who were insured or covered by Allstate for such injuries under the Michigan No-Fault Act, MCL § 500.3101 *et seq* (the "No-Fault Act"). However, many of the claims at issue in this litigation have already been approved for payment after undergoing the rigorous scrutiny and review process contained in the No-Fault Act system in which Allstate utilizes lawyers, doctors, nurses, and specialized claim representatives to investigate medical bills and determine they were medically necessary for the care, rehabilitation, and recover of the insureds. Unhappy with the results of the regulatory scheme of the No-Fault system, Allstate brings this and similar cases in an attempt to subvert the No-Fault Act.

Allstate lacks any medical evidence necessary to establish that the medical treatment provided to this discrete group of Allstate insureds was fraudulent and will undoubtedly attempt to establish its case with skewed statistical analysis created by its lawyers and paid expert. Allstate cannot prove which medical service was fraudulent or which Defendant committed the alleged specific act of fraud or which Defendant received which specific benefit from Allstate as a result.

Allstate has filed numerous lawsuits in this district alleging medical fraud against Michigan medical providers servicing victims of automobile accidents. In each of these pro-forma lawsuits, Allstate makes the same sweeping (and non-

specific) allegations in an effort to avoid payment of any of the providers pending bills and a repayment of medical bills properly paid under the No Fault Act.

Allstate will not, because it cannot, establish that the medical treatment provided to this discrete group of Allstate insureds was fraudulent. Allstate recognizes its Complaint lacks specific facts to support its salacious allegations and, if permitted, will attempt to engage in invasive, overly broad, and irrelevant discovery in an attempt to cajole the Defendants into an illegal "billing moratorium."

Allstate alleged the following claims against the Defendants: violations of 18 U.S.C. § 1962 (Counts I-XVI), common law fraud (Count XVII), civil conspiracy (Count XVIII), payment under mistake of fact (Count XIX), unjust enrichment (Count XX), and declaratory relief (Count XXI).

Relevant issues presented in this matter are as follows:

a.    Whether Allstate can prove its damages.

b.    Whether Allstate can prove the medical treatment provided was not reasonable necessary for the care, rehabilitation and/or recovery of the patients at issue.

c.    Whether Allstate can prove that each and every claim alleged and identified in the various exhibits to its Complaint was not medically necessary.

d.    Whether some or all of Allstates' claims are barred by the applicable statutes of limitations, statutes of repose, and/or laches.

e.    Whether some or all of Allstates' claims are barred by the prior releases and settlement agreements.

f.  Whether under the facts as will be illuminated through discovery and at trial, Allstate's False Claims Act paradigm of pleading, using RICO as the substitute statutory basis, is applicable in an action based on the relative rights and obligations promulgated by Michigan's no fault act.

g.  Whether Allstate's use of the predetermined litigation protocol can circumvent the administrative claim handling scheme promulgated by Michigan's no fault act.

- **Position of Defendants Advanced Surgery and the Masris.**

Defendants Advanced Surgery and the Masris largely agree with and adopt the position of the Pain Defendants. Allstate is continuing an established pattern of bringing these cases against medical providers who dare treat their insureds on a frequent basis, seeking to recoup the amounts they voluntarily paid and/or paid pursuant to settlement via extortion and strongarm tactics masquerading as legitimate federal litigation. All claims made to Allstate by Advanced Surgery were submitted through the normal claims process, and Allstate was not only allowed, but required under Michigan law to scrutinize the claims on the grounds they now claim to have been misled on. As correctly noted by the Pain Defendants, Allstate now uses this case and others like it to dispute the No-Fault system itself, rather than any of the particular claims.

To further illustrate how this case is merely ex post facto leverage to unlawfully retrieve money paid by Allstate to Defendants for their legitimate claims under the No-Fault Act, many of the services now claimed to be not performed, not lawfully rendered, medically unnecessary, excessively billed, and/or fraudulently

billed were already the subject of pre-suit negotiation and/or state court litigation over those exact issues, and Allstate's payments came via voluntary settlement and release.   Accordingly, many of Allstate's claims will fail on these grounds, particularly the RICO counts.

With respect to Advanced Surgery and the Masris, specifically, Allstate uses several baseless assumptions to build their claims against them, all of which will be conclusively shown to be untrue.  Allstate will be unable to prove any conspiratorial links between Advanced Surgery/the Masris and any other Defendants, and many of the accusations in their Complaint regarding such links are patently false.

Next, it must be noted that Advanced Surgery is an ambulatory surgical center, where procedures are performed by outside physicians.   Accordingly, when analyzing the claims of Allstate, Advanced Surgery did not render any "treatment" and thus cannot be responsible for any allegations hinging on the appropriateness of said treatment.

Finally, Allstate will not be able to prove any billing by Advanced Surgery was fraudulent and/or unreasonable.  Both the codes and the rates were made transparent to Allstate in the claims submission process, and upon information and belief, all payments made by Allstate were made after their own investigation and at rates significantly below the billed amount and/or paid pursuant to mutual settlement agreement.

4) **Pendent State Claims**: This case does include pendent state claims.

Allstate's Complaint seeks recovery under Michigan state law causes of action, including common law fraud, civil conspiracy, payment under mistake of fact, and unjust enrichment, in addition to Allstate's federal RICO claims.  The parties have no objections to the Court retaining jurisdiction over these state claims.

5) **Joinder of Parties and Amendment of Pleadings**: The parties expect to file all motions for joinder of parties to this action and to file all motions to amend the pleadings by September 27, 2019.  If this matter is stayed for any reason, the deadline to file motions to join additional parties and/or motions to amend the pleadings shall be sixty (60) days after such stay order is lifted.

6) **Disclosures and Exchanges**: The parties have agreed to make available the following documents without the need of a formal request for production:

From Plaintiff to Defendant: Allstate will produce unredacted copies of all documents appended to its Complaint on or before the deadline for the parties to serve initial disclosures, including full names of all patients at issue.

From Pain Defendants to Plaintiff: Upon identity of the Allstate Insured's alleged to be at issue in this matter, the Pain Defendants agree to produce the patient files in their possession or control.

From Defendants Advanced Surgery and the Masris to Plaintiff:  Once the identities of the patient at issue have been disclosed, Advanced Surgery/the Masris

agree to produce their files in their possession and control related to the respective patients.

7)      **Discovery**: The parties believe that all discovery proceedings can be completed by June 1, 2020.  The parties propose the following discovery plan, and acknowledge that if the Court believes that discovery motions have been filed unnecessarily, in bad faith, or for vexatious or tactical reasons, the Court may appoint a Discovery Master to shift the costs of disposing of these motions from the Court to the parties:

The parties hereby agree to commence party and third-party discovery immediately based on the deadlines set forth herein.  The parties specifically request leave to seek amended discovery deadlines upon the termination of any discovery stay order entered in this matter.

### 1. <u>Discovery Deadlines</u>

Discovery Begins:                                      August 7, 2019

Initial Disclosures Due:                          August 28, 2019

Witness List Disclosures Due:              May 1, 2020

Expert Disclosures Due:                          See proposed schedule below

Discovery Ends:                                         June 1, 2020 (fact discovery)
                                                                     September 30, 2020 (expert discovery)

Dispositive Motions Due:                        October 30, 2020 or within thirty (30) days after the close of discovery, whichever is later

The parties anticipate that expert witness testimony may be required for the purpose of assisting the trier of fact in determining relevant issues of medical standards of care, medical documentation, medical billing, and the medical necessity of treatment allegedly rendered to the patients at issue in this case.  The parties expressly reserve the right to call expert witnesses at trial.  The parties shall designate all trial experts and provide opposing counsel with reports from retained trial experts pursuant to Fed. R. Civ. P. 26(a) according to the following schedule:

- May 1, 2020 – deadline for the party(ies) with the burden of proof to serve initial expert reports;

- June 1, 2020  – deadline for party(ies) without the burden of proof to serve rebuttal expert reports;

- July 3, 2020 – deadline for all parties to serve reply expert reports;

- July 6, 2020 –  depositions of expert witnesses may commence; and

- September 30, 2020 – deadline to conclude depositions of expert witnesses.

The parties shall supplement all discovery responses pursuant to Fed. R. Civ. P. 26(e) and supplement fact witness lists (if applicable) on or by June 1, 2020.

### 2.  <u>Other Discovery Matters</u>

a)     The parties hereby request leave to serve more than twenty-five (25) interrogatories on each opposing party in an amount not to exceed forty (40) interrogatories against each opposing party.  Nothing herein shall bar any party from

petitioning the Court for leave to serve additional interrogatories upon a showing of good cause.

b)    The parties hereby agree to serve requests for admission on each opposing party in an amount not to exceed forty (40) requests against each opposing party.  Nothing herein shall bar any party from petitioning the Court for leave to serve additional requests for admission upon a showing of good cause.

c)    The parties hereby agree to serve and share all discovery electronically, to the fullest extent feasible.  Discovery requests shall be deemed served on the date that they are electronically transmitted to counsel for the recipient party(ies). Discovery responses shall be deemed served on the date that they are electronically transmitted to counsel for the requesting party(ies).  Document production shall occur by secure online file sharing to the fullest extent possible.

8)    **Disclosure / Discovery of Electronically Stored Information**: The parties have discussed the production of electronically stored information and suggest that such information be handled as follows:

Undersigned counsel have discussed and agreed on the disclosure and preservation of electronically stored information ("ESI") and the protection of confidential information, including protected health information.  The parties have separately submitted a proposed confidentiality and protective order and a proposed clawback agreement to the Court to govern these issues.

9)   **Assertion of Claims of Privilege or Work-Product Immunity After Production**:  The parties have already submitted a proposed confidentiality and protective order and a proposed clawback agreement to the Court to govern these issues.

10)   **Motions**: The parties acknowledge that E.D. Mich. LR 7.1 requires a moving party to ascertain whether any motion will be opposed. All motions shall affirmatively state the efforts of the moving party to comply with the obligation created by Rule 7.1.  All nondispositive motions shall be accompanied by a certificate setting forth in detail the efforts of the moving party to comply with the obligation created by Rule 7.1.  All discovery motions shall be accompanied by a certificate and any relevant documentation or correspondence detailing the movant's attempts to seek resolution of the discovery dispute before filing the motion.

Without limiting their rights to file motions as necessary, the parties do not anticipate filing any dispositive motion with the Court before the close of discovery. The parties may file appropriate motions related to issues that may arise during the progression of this case.

11)   **Alternative Dispute Resolution**: The parties acknowledge that the Court reserves the right under Local Rule 16 to order alternative dispute resolution, and request that this case be referred for a settlement conference with a mutually agreed upon facilitator.

**Length of Trial**: Allstate estimates that the trial will last approximately fifteen (15) days total lasting from 8:30 a.m. to 2:00 p.m. each day, of which Allstate will require approximately ten (10) days to present its case. The Pain Defendants' position on the length of trial is undetermined at the present time since the length of the trial will depend upon the identity of the 539 patients at issue which has yet to be disclosed. The Pain Defendants intend on calling most, if not all, of such patients as witnesses to refute Plaintiffs' allegations. Defendants Advanced Surgery and the Masris concur with the position of the Pain Defendants; it is close to unknowable at this point as to how long the trial may take. However, it is expected that many of the claims related to the 539 patients will be dismissed prior to trial via summary judgment, which could considerably shorten the estimated trial length. Even accounting for the claims that may survive, Advanced Surgery and the Masris estimate thirty-plus (30+) days to present their defense.

12)   **Prospects of Settlement**:  Allstate and defendants Advanced Surgery, Haitham Masri, and Fatina Masri have already agreed to facilitation, which will occur on August 8, 2019.  Allstate and the Pain Defendants have no objection to use of facilitative mediation or other form of early settlement processes in an attempt to resolve this matter.

13)   **Electronic Document Filing System**: Counsel acknowledges that Local Rule 5.1 requires that attorneys file and serve all documents electronically, by means of

the Court's CM/ECF system, unless the party has been excused from electronic filing on motion for good cause shown.  The Court expects all counsel to abide by the requirements of this rule. Pro se parties (litigants representing themselves without the assistance of a lawyer) acknowledge that they must submit their documents to the Clerk on paper, in a form complying with the requirements of the local rules. Counsel opposing a pro se party acknowledges that they must file documents electronically but serve pro se parties with paper documents in the traditional manner.

14)   **Other**:  This case involves claims submitted by the defendants to Allstate relative to at least 539 separate patients and the parties agree that the proposed discovery deadlines set forth herein are warranted to permit each party an opportunity to prepare fully for trial in light of the scope of this case.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just and speedy determination of this action.  The parties expressly reserve the right to seek the amendment and/or modification of any provision set forth herein upon notice to all parties.

[SIGNATURE PAGE FOLLOWS]

STIPULATED AND AGREED TO THIS 25th DAY OF JULY, 2019:

| | |
|---|---|
| *Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company* | *Michigan Pain Management PLLC, Dearborn Pain Specialists, PLC, Sterling Heights Pain Management, PLC, North Shore Injury Center, Inc., Medi Transit Inc., James Padula, D.O., Jonathan Maffia, Elias Goldstein, D.C., Albert Jerome, D.C., Frances Madden, M.D., Ali Faraj, and James Deweese* |
| By their Attorneys, | By their Attorneys, |
| */s/ Jacquelyn A. McEttrick* | */s/ Peter W. Joelson* |
| _____<br>Richard D. King, Jr.<br>Nathan A. Tilden (P76969)<br>Jacquelyn A. McEttrick<br>Andrew H. DeNinno<br>Adam G. Gutbezahl<br>SMITH & BRINK<br>38777 Six Mile Road, Suite 314<br>Livonia, MI 48152<br><br>350 Granite St., Suite 2303<br>Braintree, MA 02184<br>(617) 770-2214 | _____<br>Peter W. Joelson (P51468)<br>Emily R. Warren (P76675)<br>JOELSON ROSENBERG, PLC<br>30665 Northwestern Hwy., Suite 200<br>Farmington Hills, MI 48334<br>(248) 626-9966<br><br>Gary R. Blumberg (P29820)<br>LAW OFFICES OF GARY R. BLUMBERG, P.C.<br>15011 Michigan Ave.<br>Dearborn, MI 48126<br>(313) 230-1121 |

17

| | |
|---|---|
| *Advanced Surgery Center, LLC, Fatina Masri, M.D., and Haitham Masri, M.D.*<br><br>By their Attorneys,<br><br>*/s/ Adam G. Slingwein*<br>_____<br>Bruce K. Pazner (P39913)<br>Adam G. Slingwein (P78711)<br>BRUCE K. PAZNER, P.C.<br>15200 East Jefferson, Suite 104<br>Grosse Pointe Park, MI 48230<br>(313) 822-2244<br><br>Ali H. Koussan (P75044)<br>KOUSSAN HAMOOD PLC<br>841 W. Milwaukee<br>Detroit, MI 48202<br>(313) 444-8348 | |